Ruffin, C. J.
 

 The negroes are given to Mrs. Coor for life, and then to her children ; and it admits of no doubt, that the intention was that her interest should be her separate property. The words are perfectly clear: “ the legacy I leave her is to be free, clear and independent of her husband, and not subject to his debts or control.” Iiis exclusion could not be more expressly declared. He therefore can take no beneficial interest in this property under the will, whether the legal title be vested in his wife’s brother as trustee, or be vested in the husband himself, for want of the interposition of another ti-ustee, since it has been long held, that, when there is a clear intention to give a separate estate to a married woman, it shall not fail for want of a trustee, but be effectuated by converting the husband, in respect of the legal title, which comes to him
 
 jure
 
 mar.iti, into a trustee for her.
 
 Rich
 
 v.
 
 Cockell,
 
 9 Ves, 375.
 
 Porker
 
 v.
 
 Brooke,
 
 Id. 583. It follows, if Coor was trustee for his wife, that Wright, as a purchaser with notice, or as purchaser under execution against the trustee,
 
 Freeman
 
 v.
 
 Hill,
 
 1 Dev. & Bat. Eq. 389, takes the negroes subject to the same trust. The
 
 *251
 
 only question, then, which exists in the case, and the only one, indeed, which was argued, is, whether Charles Croom, the son, takes this share, as trustee. It is said for the defendant, that C. Croom did take the legal title, and therefore, that he might have brought detinue or trover, and that, as he liad remedy at law, there is no reason why this Court should take the jurisdiction. This reduces the dispute to a single point, as to the mode of redress; it being admitted that Mrs. Coor must be entitled to it here, or at law by an action by her trustee. Upon that point, the opinion of the Court is against the defendant. Without determining whether a bill would or would not lie, under the circumstances of this case, by Mrs. Coor and her children, to have their 'respective interests declared and secured, although the construction of the will had vested the legal title in Charles Croom, the son, the Court holds, that such is not the proper construction of the will, and that an-action at law could not be sustained by him. We have little doubt that the statement in the bill is correct, that the intention of the testator was to vest the title in his son as trustee for his daughter; or, rather, if he had been fully advised of the advantages of a trustee, properly speaking, in more effectually and cheaply protecting the interest of his daughter, he would have given the legal title to the son. But we think, as the will is, expressed, that intention is not sufficiently declared. The testator seems not only to have been
 
 inops consilii,
 
 but it is apparent that the instrument is very loosely drawn, and is the production. of an uninformed and confused mind, so that, as is often the case, after a disposition in terms sufficiently precise to leave no doubt of the primary intention or as to its legal effect, if that disposition stood by itself, other language is used, conveying a glimmering of an intention .somewhat inconsistent with that previously declared. But in such cases, the plain legal import of what is explicitly set down ought not to be defeated, upon the other
 
 *252
 
 dubious and imperfect expression of intention. Now this will in the beginning contains words of direct gift
 
 to
 
 Mrs. Coor: “ I give and bequeath to my five children,’5' “ to them I leave fifteen negroes,” “ those fifteen I give
 
 to
 
 be theirs at my death and my wife’s,” “ these I give to them with their future increase.” The gift of Mrs. Coor’s share
 
 to her
 
 is just as clearly and by exactly the same terms, as the gifts of the shares of the other children are
 
 to them.
 
 But as the testator meant that the gift to Mrs. Coor should be to her separate use, he not only declares that intention in the next sentence, but expresses himself so as to shew very plainly that there was at least some vague notion floating in his mind, that it was necessary or might be useful to substitute, for the husband, some other person to take care of the daughter’s interest, as regards the productiveness of the property, and, perhaps, its protection from the husband or his creditors. To that' end he appoints his son Charles “the guardian” of his daughter, and adds, “ the legacy
 
 1 leave her
 
 is to be wholly under the
 
 management
 
 of the guardian, to act as he thinks best for her profit.” The natural sense of this passage is to constitute the son the manager merely of the negroes. If it stood alone, it might be taken as an implied gift to the son in trust for the daughter. But there is-no necessity of such implication to raise an interest in the daughter ; for there has been a previous express gift to her, which dispenses with any implication on the subject. And we think that the operation of that express gift, anxiously repeated several times, as we have seen, cannot be overcome by inferences from the terms in which an interest or an authority is conferred on the son, but it is uncertain which was intended, or which the testator conceived would be best. The testator, as a parent, 'charged his son with the duty of affording a brother's, care and protection to his sister, but he does not take .from her the title, which he had just vested in her, and bestow it on the sop. The consequence is, that the title
 
 *253
 
 of the wife under the will, devolved by law on the husband, but in trust for her to her separate use; and therefore his legal title,-though subject at law to be sold for his debts, was acquired by this purchaser upon the same trusts. The decree must therefore be reversed with costs, and the demurrer over-ruled, and the cause remanded for an answer or further proceedings thereon.
 

 Per Curiam.
 

 Decreed accordingly.